**United States District Court**
For the Northern District of California

1

2

3

4

5                  IN THE UNITED STATES DISTRICT COURT

6                 FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   UNITED STATES OF AMERICA,                    No. C 11-00172-1 SI

9            Plaintiff,                          **ORDER GRANTING IN PART AND
                                                 DENYING IN PART DEFENDANT'S**
10    v.                                         **MOTION TO SUPPRESS**

11  ANTONIO GARCIA,

12           Defendant.
                                              /
13

14

15       On August 12, 2011, the Court heard argument on defendant's motion to suppress. Having

16  considered the arguments of counsel and the papers submitted, the Court hereby GRANTS IN PART

17  and DENIES IN PART defendant's motion.

18

19                            **BACKGROUND**

20       On January 23, 2009, defendant Antonio Garcia was detained and then arrested in San Francisco

21  on Hyde Street between Ellis and Eddy for possession of cocaine in violation of California Health and

22  Safety Code section 11350.[1]  On January 27, San Francisco Police Inspector Scott Lau submitted a

23  statement of probable cause to the San Francisco Superior Court, in support of a request for a warrant

24  to search defendant's house. *See* Statement of Probable Cause, Declaration of Lynn Keslar in Supp. of

25  Mot. to Suppress ("Keslar Decl."), Ex. A.

26  _____

27       [1]    He was also charged with resisting, delaying or obstructing an officer in violation of
    California Penal Code section 148, apparently for attempting to prevent police officers from
28  documenting gang tattoos after he had been transported to the police station. *See* Jan. 23 Incident
    Report, Declaration of Lynn Keslar in Supp. of Mot. to Suppress ("Keslar Decl."), Ex. C, at 7.

**United States District Court**
For the Northern District of California

1    In addition to describing his training and qualifications as an affiant, Inspector Lau described

2    the events of January 23 as follows.  He, along with Sergeant Brown, Inspector Yu, Sergeant Ries, and

3    Sergeant Chorley,

4    > conducted a surveillance in the area of Eddy St. and Hyde St.  We know this area is
frequented by "11th St." Sureno gang members.  Insp. Yu is currently investigating a

5    > shooting involving an 11th St. gang member by the name of Dennis Hanrahan . . . who was
shot on 1/21/09 in this area. . . .  During our investigations at Gang Task Force, we have

6    > also had information in the recent past that 11th St. gang members have firearms, are
selling narcotics, and are extorting local drug dealers.

7    > Sgt. Ries observed a number of 11th St. gang members mid-block on the east side
of Hyde St. between Ellis St. and Eddy St.  They appeared to be loitering beside a green

8    > Buick . . . . that was double-parked in the #1 lane of Hyde St. traffic blocking a private
driveway.  We contacted this group which included the following subjects:  Antonio

9    > "Capone" Garcia [and five others].  We knew all these subjects from prior contacts with
the exception of [one].  Antonio Garcia is a 19th St. Sureno gang member, [and the other

10   > four known subjects are 11th St. gang members].  Antonio Garcia advised Sgt. Chorley
that the double-parked green Buick belonged to him.  As we were speaking to these

11   > subjects, Sgt. Chorley looked into the green Buick from outside the vehicle through the
driver's side window which had been rolled down; using his flashlight to illuminate the

12   > interior of the vehicle, Sgt. Chorley observed a small plastic baggy containing suspected
cocaine. Sgt. Chorley advised us of his observation, and we arrested Garcia. Sgt. Chorley

13   > seized the baggy of suspected cocaine from the vehicle.  When Garcia asked why he was
being handcuffed, Insp. Yu told him that a bag of cocaine had been found in his vehicle.

14   > Garcia spontaneously stated, "Come on, man, it's a little personal."  Garcia was clearly
upset that he had been arrested for what he considered a small amount of drugs.  The other

15   > subjects left the scene.

16   > Garcia was transported to Co. J.  Garcia's tattoos were photographed.  We noted
that he had the following Sureno gang-related tattoos:  "13" and "calle ezinueve" on his

17   > back and on his left hand he had 3 dots. . . . The SFPD Crime Lab tested the suspected
cocaine and found it tested positive for the presence of cocaine salt with a net weight of

18   > .42 grams.

19   *Id.*  Inspector Lau also stated that he knows from his training and experience "that it is common for

20   someone who consumes cocaine to possess paraphernalia for the ingestion of cocaine at his residence

21   or in his vehicles" and "that it is common to find additional drugs and empty used packaging items at

22   a drug user's residence or in his vehicles." *Id.*

23   On the basis of Inspector Lau's affidavit, a San Francisco Superior Court Judge signed a search

24   warrant authorizing the seizure of:

25   1. Cocaine

26   2. Paraphernalia for the ingestion of cocaine, including but not limited to straws, rolled
papers, smooth-surfaced items such as glass, etc., razor blades.

27   3. Narcotics packaging including but not limited to small ziplock bags, small pieces of
plastic, pieces of paper.

28

2

**United States District Court**
For the Northern District of California

1

2

3

[And] 4. Evidence of street gang membership or affiliation including documents, photos, drawings, writings, gang paraphernalia (e.g., bandanas, jackets, t-shirts), information stored on electronic devices, and graffiti depicting gang members' names, initials, logos, monikers, and/or slogans.

4

*See* Search Warrant, Keslar Decl., Ex. B.

5

The police searched Garcia's home later that evening.  Among other things, they found a rifle,

6

bullets, four bags of suspected marijuana, scales, and drug packaging.  *See* Jan. 27 Incident Report,

7

Keslar Decl., Ex. E, at 9.  The police also found what they call "gang-related items," including blue

8

bandanas.  *See id.*

9

Defendant filed a motion to quash the search warrant in state court, which the San Francisco

10

judge who had signed the search warrant denied after a hearing on October 23, 2009.  *See* Transcript,

11

Keslar Decl., Ex. D.  At the hearing, defendant's attorney argued that under California law, neither

12

possession of a user-amount of cocaine nor evidence of gang membership, without more, is sufficient

13

to support a warrant to search a person's residence.  The judge found that she "probably shouldn't have

14

signed the warrant based on what's in the affidavit."  *Id.* at 12:15–12:17.

15

16

17

There's a background in this case that there was a gang shooting the week before, and I think that quite honestly that context probably had me as the magistrate concerned at the time that I got the warrant. . . .  But you're right, it's not set forth in the affidavit. . . .  [Q]uite honestly, I think I was considering factors that I know of . . . that were not specifically set forth in the affidavit.

18

*Id.* at TR 3:19–3:20; 6:17–6:18; 9:14–9:17.  Nonetheless, the judge found that the officers were acting

19

in "good faith in seeking the warrant in the manner they did [and] in executing the warrant."  *Id.* at TR

20

10:16–10:19.[2]

21

22

23

24

---

    [2]     While discussing the good faith exception, the judge mentioned the case *People v. Pressey*, 102 Cal. App. 4th 1178, 1182 (2002), in which a California appellate court held that a warrant to search a person's residence was facially invalid where it was based only on evidence that the person was found in possession of a controlled substance, and the expressed opinion of an experienced officer that drug users with controlled substances on their person or in their car are likely to have more of those substances where they live:

25

26

27

        [T]hese officers were acting in good faith.  There's no reason to believe they weren't acting in good faith.  The only question for me is whether that good faith exception still applies.
        The Pressey case seems to say it doesn't.  This may be a situation where it does.  Someone at a higher level than me will make that determination.  So I'm going to deny the motion to quash for that reason.
        [ . . . ]

28

        [T]here's two elements to the good faith . . . .  One is whether they had good faith

3

**United States District Court**
For the Northern District of California

1    Defendant is charged in federal court with one count of being a felon in possession of a firearm

2    in violation of 18 U.S.C. § 922(g)(1).  Indictment (Doc. 1).  Currently before the Court is a motion to

3    suppress, in which defendant requests the suppression of all evidence seized from defendant's home,

4    car, and person, as well as all statements made by defendant and three individuals who were in his home

5    when it was searched.

6

7    **LEGAL STANDARD**

8    The Fourth Amendment protects individuals against unreasonable searches and seizures.  U.S.

9    Const. amend. IV.  Evidence resulting from an unconstitutional search or seizure cannot be admitted as

10   proof against the victim of the search, and therefore must be suppressed.  *See Wong Sun v. United*

11   *States*, 371 U.S. 471, 485 (1963).

12   "A search warrant, to be valid, must be supported by an affidavit establishing probable cause."

13   *United States v. Stanert*, 762 F.2d 775, 778 (9th Cir. 1985).  "[P]robable cause means a fair probability

14   that contraband or evidence is located in a particular place.  Whether there is a fair probability depends

15   upon the totality of the circumstances, including reasonable inferences, and is a commonsense, practical

16   question.  Neither certainty nor a preponderance of the evidence is required."  *United States v. Kelley*,

17   482 F.3d 1047, 1050–51 (9th Cir. 2007) (internal quotation marks and citations omitted).  In determining

18   whether a search warrant was based upon probable cause, the district court is "limited to the information

19   and circumstances contained within the four corners of the underlying affidavit."  *United States v.*

20   *Stanert*, 762 F.2d 775, 778, *amended on other grounds*, 769 F.2d 1410 (9th Cir. 1985).

21

22   in seeking the warrant in the manner they did.  And second is good faith in executing the
     warrant.
23          I believe they acted in good faith in both. . . . [T]hey're not charged with knowing
     exactly what the nuances are of the law.  Clearly there's four gang members standing
24   there.  They have a gang shooting, which was not in the affidavit – it was in the affidavit,
     but it's not tied into –
25          [. . .]
            I don't know what they know is a crime or isn't a crime.  I know these officers
26   were involved in investigating the murder.
            [ . . . ]
27          I think they – I believe the police officers in this case acted in good faith.
     Somebody might decide otherwise.
28   Transcript, Keslar Decl., Ex. D, at TR 9:21–9:28; 10:15–24; 11:9–11:11; 12:13–12:15.

4

**United States District Court**
For the Northern District of California

1    Review of a judge's determination that probable cause existed for a warrant is deferential; "the

2 duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . .

3 conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238-39; *see also United States v. Kelley*,

4 482 F.3d 1047, 1050 (9th Cir. 2007) ("Normally, we do not 'flyspeck' the affidavit supporting a search

5 warrant through de novo review; rather, the magistrate judge's determination should be paid great

6 deference." (internal quotation marks omitted)).

7    Where officers conducting a search reasonably relied on a warrant that later turned out to be

8 invalid, there is a good faith exception to the exclusionary rule. *See Massachusetts v. Sheppard*, 468

9 U.S. 981, 987–88 (1984).  In general, evidence will not be suppressed when the magistrate, not the

10 officer, errs.  *United States v. Mendosa*, 989 F.2d 366, 369 (9th Cir. 1993).  However, information

11 provided to the magistrate must be truthful "in the sense that the information put forth is believed or

12 appropriately accepted by the affiant as true." *Franks v. Delaware*, 438 U.S. 154, 165 (1978). Evidence

13 should be suppressed only if: (1) the magistrate has abandoned his detached and neutral role, (2) the

14 officers were dishonest or reckless in preparing their affidavit, or (3) the officers could not have

15 "harbored an objectively reasonable belief that probable cause existed." *United States v. Leon*, 468 U.S.

16 897, 926 (1984).  It is the government's burden to demonstrate that the officers' reliance on an invalid

17 warrant was reasonable.  *See Center Art Galleries*, 875 F.2d at 752.

18

19                                              **DISCUSSION**

20  **I.    Facial validity of the warrant**

21    Defendant argues that the search warrant was facially invalid, because evidence that an

22 individual uses drugs, by itself, does not yield probable cause to believe that drugs will be found in the

23 person's home.  Therefore, he argues that all fruits of the search of his home should be suppressed.

24    The Ninth Circuit has repeatedly affirmed searches of homes of suspected drug dealers even

25 where there is no direct evidence linking the homes to illegal activity, because the presence of evidence

26 in a drug dealer's home is a reasonable inference to draw.  *See, e.g., United States v. Fannin*, 817 F.2d

27 1379, 1381–82 (9th Cir. 1987); *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986);

28 *United States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir. 1985). The government argues that this caselaw

**United States District Court**
For the Northern District of California

1    can and should be extended to drug users, especially since Inspector Lau stated in his affidavit that it

2    is "common" for drug users to have additional drugs and paraphernalia at their residences.

3          Such an affidavit is available in every case.  In effect, the government is looking for a bright-line

4    rule that the police have probable cause to search the house of any person found with any amount of

5    illegal drugs anywhere.  This would be a significant extension of the case law, taking it beyond the

6    bounds of what is permitted by the Fourth Amendment.  The Ninth Circuit has held that "probable cause

7    that a resident of the location has committed a crime is in itself insufficient to satisfy" the requirement

8    that evidence probably will be found at the locations to be searched.  *See United States v. Fernandez*,

9    388 F.3d 1199, 1254 (9th Cir. 2004); *United States v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995).  Drug

10   dealing and drug using are categorically different crimes.  To extend the exception in *Fannin* and

11   *Angulo-Lopez* is to eviscerate the rule stated in *Fernandez* and *Gil*.  *See United States v. Lucarz*, 430

12   F.2d 1051, 1055 (9th Cir. 1970) (explaining that if mere probable cause to arrest a suspect also

13   established probable cause to search the suspect's home, there would be no reason to distinguish search

14   warrants from arrest warrants).  The search warrant in this case was facially invalid.[3]

15

16   **II.    Good Faith**

17         The government argues that even if the search warrant was facially invalid, the good faith

18   exception applies, and the evidence and statements should not be suppressed.  Defendant argues that the

19   exception does not apply because the officers should have known that they could not obtain a search

20

21

22

23         [3]      Although the affidavit contained evidence that defendant was a gang member, there was
24   no connection between his alleged gang membership or evidence thereof and his alleged drug possession
     or evidence thereof.  The government does not defend the validity of the search warrant on this ground.
     Additionally, although the government does not concede that the search warrant was overbroad to the
25   extent that it sought evidence of gang membership, it has disclaimed any intent to introduce such
     evidence and therefore declined to brief the issue.
26         The affidavit also refers to a murder investigation.  However, no connection is made between
     defendant and the murder investigation, and the search warrant was sought for evidence of drug
27   possession, not evidence of involvement in a murder.  At most, the police officers' involvement in a
     murder investigation provides context to explain why they were on Hyde Street.  The government does
28   not defend the validity of the search warrant on this ground either.

1    warrant for defendant's home based on the evidence that he possessed a small amount of cocaine.[4]

2        The exclusionary rule does not apply when the police conduct a search in "objectively reasonable

3    reliance" on a warrant later held invalid. *Leon*, 468 U.S. at 922. "[S]uppression is appropriate only if

4    the officers were dishonest or reckless in preparing their affidavit or could not have harbored an

5    objectively reasonable belief in the existence of probable cause." *Id.* at 926. Courts apply "'the same

6    standard of objective reasonableness . . . in the context of a suppression hearing'" and when determining

7    whether "'qualified immunity [is to be] accorded an officer.'" *See Groh v. Ramirez*, 540 U.S. 551, 565

8    n.8 (2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 344 (1986)).

9        The Ninth Circuit has long held that there must be a reasonable nexus between the suspected

10   criminal behavior, the items sought, and the location to be searched, in order for a warrant to be valid.

11   *See, e.g., United States v. Rodriguez*, 869 F.2d 479, 484 (9th Cir. 1989); *see also United v. Ramos*, 923

12   F.2d 1346, 1351 (9th Cir. 1991) (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)), *overruled*

13   *on other grounds*, *United States v. Ruiz*, 257 F.3d 1030 (9th Cir. 2001) (en banc). The Circuit has

14   carved out a single exception, for drug trafficking, based on concerns particular to that crime. There

15   have been no indications in the case law that the exception would, could, or should be expanded.

16       The Court has discovered no case in the country that has upheld a search warrant on facts like

17   those in this case. In fact, a number of cases from both federal and state courts, all applying federal

18   constitutional law, have concluded that such warrants are invalid, including cases from two state

19   appellate courts in this circuit. The earliest statement about the nexus problem as it relates to drug use

20   and residential searches appears to be in a forty year old federal habeas case out of Texas, where the

21   Fifth Circuit explained that the fact that a homeowner "had admitted that he was a narcotics user did not

22

---

23       [4]    The Court notes that the while the state court found that the good faith exception applied

24   to the search in this case, she did not explain the legal or factual basis for her decision in any detail, and
     therefore the Court is essentially considering this question for the first time in this case.

25       To the extent that the state court judge's statement could have been understood to mean that the
     good faith exception will apply where a police officer obtains and executes a search warrant to look for

26   evidence of drug use as a pretense for searching for evidence relating to a murder, without independent
     probable cause to believe that the individual whose house is to be searched is connected to the murder,

27   and in fact without any facts connecting the person's drug use to the residence or the murder to the
     person, the Court disagrees with that reasoning. Additionally, to the extent that the state court judge's
     statement could have been understood to mean that a police officer is not tasked with knowing clearly

28   established law in the jurisdiction, the Court disagrees with that reasoning as well.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   provide probable cause for believing that the narcotics were present in his house on the night of the

2   search." *State of Tex. v. Gonzales*, 388 F.2d 145, 148 (5th Cir. 1968).  The sentiment expressed in the

3   case has been extended and affirmed.  At least one federal circuit court, three state supreme courts, and

4   three appellate courts from other states have held that a search warrant for the residence of a person

5   found in possession of a user-amount of illegal drugs is facially invalid if there are no specific facts

6   connecting drugs to the person's home, and there does not appear to be any case law to the contrary.

7   *See United States v. McPhearson*, 469 F.3d 518, 520–21 (6th Cir. 2006); *State v. Johnson*, 589 N.W.

8   2d 108 (Neb. 1999) (applying test from *Illinois v. Gates*, 462 U.S. 213 (1983)), *overruled in part on*

9   *other grounds*, *State v. Davidson*, 618 N.W. 2d 418 (Neb. 2000); *State v. Souto*, 578 N.W. 2d 744,

10  748–49 (Minn. 1998) (same); *State v. Doile*, 769 P.2d 666 (Kan. 1989) (same), *overruled in part on*

11  *other grounds*, *Horton v. California*, 496 U.S. 128 (1990); *Cunningham v. Commonwealth*, 643 S.E. 2d

12  514, 516–17 (Va. App. Ct. 2007) (same); *People v. Pressey*, 102 Cal. App. 4th 1178, 1182 (2002)

13  (same); *State v. Stephens*, 678 P.2d 832, 834 (Wash. App. Ct. 1984) (applying other U.S. Supreme Court

14  precedent).[5]

15

16     [5]      In *McPhearson*, the affidavit explained that the police suspected that they would find
evidence of drug trafficking at the residence of a man arrested at the threshold of his house for simple
17  assault with 6.4 grams of crack cocaine on his person.  496 F.3d at 521.  In *Johnson*, the affidavit
explained that the appellant was arrested for failure to pay child support, some amount of
18  methamphetamine was found on his person incident to arrest, and he had a prior record for selling drugs
at some point.  It also contained the opinion of a police officer that drug users and drug dealers keep
19  drugs at their residences.  589 N.W. 2d at 136.  In *Souto*, the affidavit indicated that the police had
intercepted a package containing drugs addressed to the appellant at her former residence ten months
20  earlier, that the package was never delivered, that a confidential informant told them that the appellant
would use drugs at parties the informant threw at his own house, and that the appellant was in phone
21  contact with a known drug dealer from her home.  578 N.W. 2d at 745–46.  In *Doile*, the affidavit
explained that the appellant was arrested at his vehicle outside of a club, in possession of a partially
22  burned marijuana cigarette, a mirror, a baggie of marijuana, and a straw in which white powder residue
was discovered, and that he had been convicted of selling cocaine five years earlier.  769 P.2d at
23  671–72.  In *Cunningham*, the affidavit explained that the police attempted to stop the appellant's vehicle
for a traffic offense, the appellant attempted to evade the police in his vehicle and then fled on foot, the
24  appellant was arrested with marijuana and a plastic baggie corner with suspected cocaine residue on his
person, and the police found a razor blade, several empty plastic baggies consistent with drug packaging,
25  various butane lighters, and several small brass screens that are commonly used in smoking devices in
his car.  It also contained the opinion of an experienced officer "that people that use marijuana often
26  keep marijuana as well as devices used to ingest marijuana in their residences."  643 S.E. 2d at 516–17.
In *Pressey*, the affidavit explained that the appellant was arrested during a traffic stop for simple
27  possession of a controlled substance, and it contained the opinion of an experienced officer that drug
users with controlled substances on their person or in their car are likely to have more of those
28  substances where they live.  102 Cal. App. 4th at 1181–82.  In *Stephens*, a misstatement in the affidavit

**United States District Court**
For the Northern District of California

1    Other federal and state courts have agreed in dicta. *See, e.g., United States v. Hodge*, 246 F.3d

2    301, 306 (3d Cir. 2001) (explaining that while there was "no direct evidence that drugs or drug

3    paraphernalia would be located at Hodge's home," the magistrate could have reached that conclusion

4    indirectly, based on part on the fact that the "amount of crack cocaine Hodge possessed indicated he was

5    'involved in selling drugs, rather than merely using them'")*; Ex parte Perry*, 814 So.2d 840, 843 (Ala.

6    2001) ("[A] defendant's possession of illegal drugs does not, without more, make reasonable a search

7    of the defendant's residence."). The State of Florida actually prohibits by statute the issuance of such

8    search warrants. Fl. Stat. § 933.18(5) (proscribing the issuance of a warrant to search a dwelling for

9    narcotics unless "[t]he law relating to narcotics or drug abuse is being violated therein.").

10    Of the courts to apply the *Leon* good faith test on similar facts, only one court – the 2002

11    decision in *People v. Pressey* – has found that the good faith exception applied. *See Pressey*, 102 Cal.

12    App. 4th at 1190–91 ("Given the dearth of authority directly on point and the existence of potentially

13    supportive precedent [in the drug dealing cases], the issue of probable cause was 'debatable' when the

14    warrant herein was sought, *even though the issue, upon examination, is not a particularly close one*."

15    (emphasis added)). In contrast, the Sixth Circuit concluded in *McPhearson* that the affidavit was "so

16    bare bones as to preclude application of the good-faith exception." 469 F.3d at 526. In that case, the

17    search warrant had been issued on the basis of an affidavit that explained that the police suspected that

18    they would find evidence of drug trafficking at the residence of a man arrested at the threshold of his

19    house for simple assault with 6.4 grams of crack cocaine on his person. *Id.* at 521. Although there was

20    no specific Sixth Circuit case law about searching the residences of those found in possession of user-

21    amounts of drugs, there was general case law holding that the good faith exception does not apply if an

22    affidavit does not contain a "'minimally sufficient nexus between the illegal activity and the place to

23    be searched.'" *Id.* (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc)).

24

25    was excised pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), and the remaining affidavit stated
26    that appellant "had a small quantity of marijuana in his possession at the time of arrest." 678 P.2d at
       834.

27         Compare the affidavit in this case, which provides information about suspected criminal activity
       of members of *other* gangs, states that defendant was found next to his double-parked car and that he
28    had .42 grams of powder cocaine in his car, and explains that it is "common" for drug users to keep
       drugs in their homes.

1          Applying the *Leon* test in *Doile*, the Kansas Supreme Court similarly found that the good faith

2    exception did not apply, because the affidavit did "not contain any factual allegations from which the

3    judge could have found there was probable cause to believe contraband was in the residence." 769 P.2d

4    at 673.  In that case, the affidavit had explained that the appellant was arrested at his vehicle outside of

5    a club, in possession of a partially burned marijuana cigarette, a mirror, a baggie of marijuana, and a

6    straw in which white powder residue was discovered, and that defendant had been convicted of selling

7    cocaine five years earlier.  A prior Kansas case had held that "'[e]vidence of a single isolated drug sale

8    may not give probable cause to believe drugs are present at a particular location.'"  *Id.* at 672 (quoting

9    *State v. Morgan*, 563 P.2d 1056 (Kan. 1977)).

10          Most recently, in *Cunningham*, a Virginia appellate court suppressed evidence found at the

11   appellant's residence, after applying *Leon*, because no reasonable police officer could have believed the

12   warrant was valid based on the facts in the affidavit:  "The law is clear on whether searching a person's

13   residence based solely on suspected drug use unconnected to the residence is constitutionally

14   permissible.  *Every case that we found nationwide addressing this issue held that such a search, based*

15   *upon the arrest of a user of drugs, violates the Fourth Amendment.*"  643 S.E. 2d at 522 (footnote

16   omitted) (emphasis added).  The affidavit had explained that the police attempted to stop the appellant's

17   vehicle for a traffic offense.  The appellant attempted to evade the police with his vehicle.  The appellant

18   then fled on foot.  The appellant was arrested with marijuana and a plastic baggie corner with suspected

19   cocaine residue on his person.  In the appellant's car, the police found a razor blade, several empty

20   plastic baggies consistent with drug packaging, various butane lighters, and several small brass screens

21   that are commonly used in smoking devices.  The affidavit also contained the opinion of an experienced

22   officer, "that people that use marijuana often keep marijuana as well as devices used to ingest marijuana

23   in their residences."  A prior Virginia case had held that a "warrant lacked probable cause, in part,

24   because the affidavit contained information about a single drug transaction, as opposed to repeated

25   transactions or information that Anzualda was a known drug dealer."  *Id.* (citing *Anzualda v.*

26

27

28

*United States District Court*
*For the Northern District of California*

10

United States District Court
For the Northern District of California

1    *Commonwealth*, 607 S.E.2d 749 (Va. App. Ct. 2005) (en banc)).[6]

2        In *Dougherty v. City of Covina*, --- F.3d ----, 2011 WL 3583404 (9th Cir. 2011), the Ninth

3 Circuit held that a police officer who executed a facially invalid search warrant was entitled to qualified

4 immunity, because the law of the circuit was not clearly established, neither the circuit nor the U.S.

5 Supreme Court had addressed the question, and because others circuit courts had split on similar

6 questions. *Id.* at * 5. Here, in contrast, Ninth Circuit law on the nexus requirement is clearly

7 established. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their

8 conduct violates established law even in novel factual circumstances."). Every court in the nation to

9 address the specific question presented in this case has reached the same conclusion as this Court. As

10 the California appellate court explained, "the issue, upon examination, is not a particularly close one."

11 *Pressey*, 102 Cal. App. 4th at 1190–91. The government has not met its burden to demonstrate that the

12 officers in this case could have harbored an objectively reasonable belief that probable cause existed.

13 The good faith exception does not apply, and the fruits of the search should be suppressed.[7]

14

15 **III.**      **The initial detention**

16        Defendant argues that he was detained without reasonable and articulable suspicion that he was

17 involved in criminal activity, and therefore all evidence in this case should be suppressed as the fruit

18 of an unreasonable seizure. *See United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir. 2000). The

19 January 23 Incident Report indicates that defendant was detained by the police only after they found

20 suspected cocaine in a car that they knew belonged to defendant. Defendant has not presented any

21 evidence to the contrary. Evidence found and statements made before the search warrant was executed

22 will not be suppressed.

23

24       [6]      In *Johnson*, the Nebraska Supreme Court held that the good faith exception did not apply,
because the affidavit omitted the detail that the "possession was of a small quantity not inconsistent with

25 possession for personal use." 589 N.W. 2d at 118. However, Nebraska has since changed how it applies
the good faith exception. *See Davidson*, *supra*, 618 N.W. 2d 418. In *Stephens*, the Washington

26 Appellate Court did not reach the question of good faith because of the *Franks* violation. In *Souto*, the
Minnesota Supreme Court did not reach good faith question because it had not been exhausted below.

27 578 N.W. 2d at 751 n.3.

28       [7]      Defendant also requests a *Franks* evidentiary hearing, which the Court denies as moot.

1

**CONCLUSION**

2          For the foregoing reasons and for good cause shown, the Court hereby GRANTS IN PART and

3    DENIES IN PART defendant's motion to suppress.    It is hereby ORDERED that all items seized from

4    defendant's residence be SUPPRESSED, as well as all statements made by persons present at

5    defendant's home when it was searched.

6

7          **IT IS SO ORDERED.**

8

9    Dated:  August 24, 2011

SUSAN ILLSTON
10                                                                   United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California